Good morning, and may it please the Court, I am Michael Anderson for the Petitioner of Unions. There's a very important question of administrative law at the threshold of this case, which arises from the fact that the Board has not really responded to the Court's question on remand. Seven years ago, the Board stated a national uniform rule that dues check-off rights do not exist after the CBA expires. No matter what the contract says, with or without a waiver, in the Board's view seven years ago, the employer has the option to repudiate dues check-off any time it pleases. And the Union argued that that rule is irrational and contrary to the Act. This Court didn't reach that argument seven years ago. This Court gave the Board the benefit of the doubt and said we can't make out the rationale for the Board's rule. We will remand with instructions for the Board to justify that rule or change it. Well, go ahead. Well, did it change it? Do we have a new rule with an attempted justification of it? You don't have a new rule. You have a new rationale for the outcome in this particular case. And clearly, the Union needs to defeat that rationale in order to prevail here. The reason we're arguing about the Board's failure to respond is that if all the Court does is to reverse the waiver finding, what we have is a remand back to the Board where the original Hacienda I rule is still in place and still there to defeat our claim. Well, not necessarily. It seems to me that the Board is entitled, and you can respond to this if I'm wrong, in your view, obviously. Why isn't the Board free to say, look, we've decided we don't want to have a rule? That's how I understand what they've said here. Kings X, we don't want to have a rule at all. And, of course, there's nothing that would, starting from scratch, require them to have a rule, as distinct from a case-by-case determination. So why isn't that a permissible response? And if you had prevailed on the case-by-case analysis, you know, why wouldn't that be good enough? Well, it puts the cart before the horse, because to say that to rule whether or not the Union has waived a right No, no. I know I asked a complex compound question. But why can't the Board say we don't want to have a rule at all and that that's a permissible response to the remand? If they had said that, that might have been a permissible response. But that's they didn't say that. They said we do not rely on that rule. But in the briefs, when the Union shows you here that the Board continues to enforce that rule in all other cases in the six years since this Court's decision vacating Hacienda 1, the Board responds that that's none of this Court's business. The Court says that you have no jurisdiction over what happens outside the narrow confines of this case. And, again, that might have been a permissible response if the current decision you have on remand was the first and only decision you were being asked to review. But in a case where the Board articulated the rule seven years ago and doesn't repudiate it now, if you reject the waiver rationale, the Board will be free on remand to continue to apply the original Hacienda 1 rule. Roberts. If we reject the remand, doesn't it just go back to the Board? It's essentially back in the same position it would be. The waiver argument, I'm sorry. If we agree with you on the waiver argument and we send it back to the Board, isn't it back in the same position it would be? Absolutely. And let me point out at that point, then they would have to address the issue head on. Right. And we would be back here. In a right-to-work State. We would be back here in the year 2013 arguing over the same issues that we tried to bring before the Court. That may be, but we have limited powers in any given case. We can't just go tell the agency that this is inefficient. I mean, it is inefficient. I mean, and I wonder what kind of remedy we can even, if we were to agree with your argument, all these many years later. I don't know what happens, but. Well, I think the answer really comes from Allentown Mac, where the Supreme Court opened up the idea that the Board can't play a shell game with the circuits. You'll recall that seven years ago, the Board used the same language about the waiver argument that it's currently using about the blanket rule. Seven years ago, the Board said, we do not rely on the waiver argument. But that didn't foreclose the Board from falling back into it once the Court asked the question about the broader rule. Now, after Allentown Mac, the Board is no longer entitled to say, we have a national uniform rule that applies in all cases except where a circuit court starts asking hard questions about it. And at that point, the Board will put the rule in a closet and advance case-specific justifications for the outcome to deflect the Board's attention. The union will never finally prevail in this case until someone, whether the Board or the Court, says that the underlying rule is irrational and contrary to the Act. And to get back to your question, Judge Graber, the reason why this Court has jurisdiction over the rule, notwithstanding the Board's refusal to defend it on this remand, is that that's the rule they articulated the first time around, and that's the rule that the Court took jurisdiction to grant review over. Now, it's true that this Court cannot compel the Board to state a rationale that it doesn't want to. However, by the same token, the Board cannot foreclose the Court from following through on its inquiry about that rule just by remaining mute on this remand. So if you conclude that there hasn't been a waiver of the right, the Court in this case is entitled to reach the union's argument that it's been making for the last 13 years. Yes. To do that, do we have to agree with you that the mandate was violated? Yes. And you have to explain that your mandate said justify or change the rule, not just the explanation for the particular outcome in this case. A rule is something that, by definition, applies to the other. A rule can mean many things. Right. But if the Board in this case had said a rule for this case, we hereby – well, but that's what Allentown Mac addressed, that the Board can't say the agency policy exists in a separate universe in every single case. Otherwise, what the agency is doing is it's insulating its decision-making from judicial review, because in every case, all the Court has is an ad hoc decision without any coherent rules of law to guide the Court. Now, let me – let me – why don't you address the waiver argument? Yeah. That's – that's what I'm anxious to get to. The waiver argument is entirely predicated on the plain language of the contract. There's no reliance on credibility of testimony or parole evidence. And the only language is a single sentence that's in Article 3.3 saying, The dues checkoff agreement shall be continued in effect for the term of this agreement. And from that, the Board majority uses a negative implication to conclude that once the agreement expired, there's no further obligation to maintain dues checkoff in effect. The problem is that that is the theory that the Board itself and the reviewing courts had consistently rejected in a long line of cases. And there are two points that I need to make about the contractual theory. First, your review is de novo. When the Board moves from a statutory theory to a contractual one, it loses any claim to deference from the reviewing court. That's what the Supreme Court ruled in Litton Business Systems. Your review of the Board's waiver theory is as clear and de novo as it would be if you were reviewing a district court on summary judgment. Second, you're not writing on a blank slate in construing the waiver because the overriding canon of construction is that there is no statutory waiver unless the waiver is stated in clear and unmistakable terms. And that is a canon that the Board is not free to disregard on a case-by-case basis. That is a rule that the courts enforce against the Board as much as they do in enforcing the Board. And on this point, before you decide this case, I really would urge the Court to re-judge Edward's opinion in Honeywell v. NLRB for the D.C. Circuit. It's the best discussion of the distinction between contractual rights, which run through the term of the agreement, and statutory rights to the maintenance of that term after the expiration. And Judge Edward says, if the employer wants to argue that the statutory right has been waived, it's got to do more than point to language saying that the benefit remains in effect for the term of the agreement. They have to get something more. They have to get something that says, and after the agreement expires, the employer shall have no statutory obligation to maintain that term and condition whatsoever. That doesn't exist here any more than it did in Honeywell or the other cases listed in the briefs. Now, there's another reason why the Board's waiver theory is wrong. They're looking at the wrong document. That in dues checkoff cases, the courts are very clear that the right to dues checkoff is an individual worker's right, which is insulated from the pressures of collective bargaining. So that, for instance, where an anti-union worker wishes to revoke her dues checkoff authorization, she cannot be restrained in doing that by contrary language in the collective bargaining agreement. The only document that matters is the authorization that she signed herself. And what the union is saying here is that to have any legitimacy, that policy of voluntary unionism has to be enforced just as rigorously when the employee is pro-union, when the employee wants to have the convenience of payroll deduction to pay union dues. And that's why, irrespective of the language of the collective bargaining agreement, the employer's repudiation of dues checkoff was a violation of its individual agreement with each of the 1,094 workers whose payroll deduction was torn up in 1995. But you have to rely on a contractual duty there, don't you, between the employee and the employer? That's right. That's right. But that contract is right. And it doesn't then, in the board's theory, work for the contract, even if it doesn't work for a statutory duty. No, because collective bargaining agreements cannot waive or otherwise impair the rights created in an individual authorization. That's what the Supreme Court said in Felter v. Southern Pacific, and that's what the long line of cases applying Felter to the NORA say. But that's not your primary argument, correct? No. I mean, we win whether this is analyzed as a violation of the collective bargaining agreement or the individual agreement. That's your argument. That's your primary argument. That's your main argument, as I understood it. I love all my arguments, Your Honor. But that's right. That's right. I will save my time. Unless the board has further questions, I'll save my time. Thank you. We'll hear from the board. Good morning, Your Honor. May it please the Court. I'm Greg Loro, counsel for the board. I'm here today to ask the Court to affirm the board's dismissal of the complaint in this case. And I know you've heard my opponent's arguments and read the briefs and the records, so I just wanted to clarify a couple things. First, as Your Honors know, the board in this case did not rely on the rule it articulated in the first decision. Instead, it relied on the particular undisputed facts of this case where the dues checkoff clauses in the party's agreement specifically tie the dues checkoff obligation to the term of the agreement. Counsel, I have a question to interpret the board's decision, that first long paragraph in the analysis section. There's a sentence that says the Ninth Circuit found the board's rationale insufficient to permit substantive review of its rule, and as stated above, we accept the court's remand as the law of the case. And then there is that sentence that you were referring to. And it sounds to me, I'm trying to decide whether that means we've decided not to have a rule or whether that just means we accept the fact that the Ninth Circuit can't examine our rule and, therefore, we're going to leave it insulated from review and rely on something different. That is, is there still a rule that you simply have chosen not to rely on in this case, or is there no rule? Well, I see what Your Honor is asking. I take this language at its face value that the board is saying What if it's ambiguous? That's why I'm asking you the question. I understand. I take the board as simply saying we are not relying on the rule we articulated in Hacienda 1. We are relying only on the more specific fact-bound rationale we adopted. So the rule still exists. It's just they haven't relied on it because they don't want us to look at it again. Well, they haven't relied on it. But it exists. It exists. And it's clear here the board didn't do anything to overrule a rule. Okay. So now let's suppose that we disagree with the board's rationale in this case and remand it again. Then the board is left pretty much where it was the last time. That is, it has to either repudiate the rule in Hacienda 1 or justify it in a more complete way so that we can review it. Is that correct? That may be, Your Honor. As I understand your question, if the court disagrees with the waiver finding and remands for proceedings consistent with that finding, the board would then have an outstanding issue within its primary jurisdiction. Was there still a violation here? And as part of that, it would have to see, determine, is there a violation even if there's no waiver? It's more than just a matter within its primary jurisdiction. It would return us to the original remand, wouldn't it? If this rationale is invalid, then we're left exactly where we were in Hacienda 1, remanding for the same redo as we did the first time. Right. The only question would be whether the board would be specifically obligated to rely on Hacienda 1 or a change of it. But I mean, all I'm saying is I can't speculate whether there are other possible rationales for dismissing this complaint. But I would have to basically say what Your Honor is saying makes sense. We could be back where we were on the original remand. I just can't speculate. And so there are at least two ways that that could occur. One is that we say that you had the authority to decide on a different ground, but your ground is wrong, and therefore, we're back where we started. Or if we agreed with the union that the board did not have the opportunity to find a different rationale. Either way, we'd be back where we were, it sounds like. That could be. And I should speak to the board's understanding of the remand. The board feels that it did comply with the court's mandate by adopting a different rule for this case and adopting an alternative fact-based rationale. And the board didn't feel that the court's instructions barred it from doing that, from doing a case-specific analysis. And it certainly doesn't appear, in my view, that the court's instructions specifically said, as my opponent suggests, either explain Hacienda 1 or modify and change it. I don't read that in there. I simply want to say I feel the board complied with the court's remand. As to the waiver finding, I appreciate my opponent's arguments, but the board does feel its waiver finding is supported by established principles. And there are a couple things I should clarify. One is that the board didn't issue a broad rule that any durational language will do. As your honors know, the board specifically limited its finding to the durational language we have here, where the checkoff clauses themselves limit the checkoff obligation. Well, you say limit. But limit to me implies thus far and no farther. And they forgot to say no farther. They may not have said that, but one thing the board noted and we note in our brief, this test, and it is a clear and unmistakable waiver test, has not historically been applied as requiring particular magic words. The question is whether, when you look at the circumstances of the case, the party's intent is clear that there would be no further obligation to check off dues. And applying that ---- I thought it was a little interesting that the board was very careful not to use the clear and unmistakable waiver tent. Instead, they used explicit. I should point out ---- Is that equivalent to clear and unmistakable in your view? I think it is in the Supreme Court's view. Because as your honor knows, Metropolitan Edison is a Supreme Court case laying out the clear and unmistakable waiver test, and that case also mentions that it should be an explicit waiver. And the board simply tracked that language. And there are a couple things I should point out. That sounds like half a test. If the same case says it has to be explicit and also clear and unmistakable, something can be explicit, that is stated in so many words, but still be ambiguous. I mean, the sentence I read to you was explicit. It just was ambiguous. So I don't understand how explicit takes the place of clear and unmistakable. Well, I thought explicit meant something was clear and unambiguous. But my point is the board is tracking the Supreme Court's explanation of the test. And there are a couple important things to note here. While they didn't use magic words like I waive the statutory right, the question remains whether the language as a whole supports such a finding. And the board did find the parties waive the statutory right. And it did address precedent. It explained that where you have the specific durational language we have here, again, in the dues checkoff clauses itself, and particularly limiting that obligation to the agreements, as opposed to general durational language out there, that distinguishes these provisions from others that have been found subject. In your view, which is the most supportive or strongest authority, either board authority or court authority, for this waiver determination? Well, it's a couple things. One, I do find some support in the fact that this is a fact-specific test, where you look at the circumstances, as opposed to magic words. Because I have to admit, if the case law said they have to say, I waive the statutory right, this would be a very different case. The second thing is, even cases like Honeywell support the distinction the board relied on here. They make a distinction between general durational language and specific durational language. If that case held that a standard durational clause elsewhere in the agreement without more did not waive the statutory duty to bargain, and all I'm saying here is we do have more. Also, on this idea of the ---- So Honeywell is one case that supports? Maybe I didn't make myself clear. Right. What board case authority or circuit or Supreme Court authority best supports the waiver determination here? Oh, there are others. I was just starting by saying precedent supports the distinction the board drew here. All right. And there are other cases explaining that you don't have to have magic words. Even a case like Cawthorn, which we cite, shows you don't have to recite, I waive the statutory right. The question was, if you say this obligation will end with the agreement, that can show a statute. You know, a waiver of the statutory right. Now, here we acknowledge the phrase, this shall end or terminate, wasn't there. The question remains, is that clearly the party's intent? And the board answered the question in the affirmative. Now, I would also point out that the board's ---- Well, how would that ---- that would seem to me to sweep in every durational clause. Well, no, the board did distinguish between the kind of specific durational language we have here and the kind of general durational language you have in Honeywell. There's nothing different about the wording. It's just the location. The location is significant, and there are cases saying that the structure of the agreement and the location of language can be pertinent to determining whether there's a waiver. So the only thing you really have to hang your hat on, it seems to me, that distinguishes this case potentially from some of the ones that ---- on which the union relies here is the location. That is, there's nothing in the dues checkoff segment of the contract that says terminate or end or waive, any of those kinds of things. You have a typical durational clause, but it's found specifically in that context. And that really seems to me to be what you have to rise or fall with. I see Your Honor's point. I mean, it is still the board's position that that precedent doesn't preclude the finding here. But I think there are two distinctions. One is, as Your Honor noted, and as the Honeywell Court indicated, the location can matter. There can be a difference between specific durational language we have here in the clause itself and Honeywell, where it was just a standard durational clause at the end of the agreement. But also I think in these other cases, even where the language may appear similar aside from its location, there are other factors not present here. The parties had other language that undermined the idea that they waived the right to bargain. And that we explain those distinctions in our brief. There are cases where the same article or clause containing durational language also says, but this isn't meant to alter the terms of the agreement. Or as the board understood it, there was a different intent here. There was an intent, say, in a case where you have, you know, a fund declaration provision that defines fund payments as those in accordance with the agreement. The board explained the intent there is to comply with statutory limits on the use of those funds. They have to be for the benefit of the employees. In those cases, the board said thus, the parties weren't really circumscribing the duty to bargain. There's no such language undermining the board's finding here. What do you do with the, there's an argument, it's not the main point in the briefs, but it is argued that during the year that they continued the check-off after the expiration, that created a working condition. It can't be changed. Now I understand your point, Your Honor. A couple things there. This case involves whether the company was obligated to check off dues after the agreement expired, not whether it voluntarily did so and created a term. So when you look at the complaint, you will not find any allegation of voluntarily creating a term and condition of employment. And unlike my opposing counsel, I do not view the GC's briefs as specifically making that argument. To the extent they cited the continuation of check-off, it was part of their argument that the employer was obligated to do so after the contract expired. Of course, I suppose it might be argued as a practical construction. You're talking about the intent of the parties. It could be looked at that way, Your Honor, but there's still a distinction between what you're obligated to do and what you can do voluntarily. I mean, you could still have a waiver and the parties still believe that the company's not obligated to continue check-off after the contract expires, but the company decides to do it for a while anyway. But I did want to point out, I mean, Your Honors have rightly and clearly asked me, what's the support for this? And I just want to make sure I lay it out. It's also an axiom of contract interpretation that you don't render specific terms superfluous. And the Board rightly avoided doing that here. It promptly rejected the idea that the party's decision to include specific relational language in the dues check-off clauses itself, the Board rightly avoided rendering that decision annullity. It rightly found that that didn't add nothing, as the Board put it, to this case. And that is an established principle of contract interpretation. So I think in sum, the Board did apply the test for waiver. It did do a narrow holding, based on the facts here, as opposed to some broad holding that any durational language can do. The distinction it drew between specific and general language is grounded in precedent as well as other principles of contract interpretation. And as the Board views it, the other cases are distinguishable. It is, you know, contractual language that's included in different parts of the agreement. The location does matter. And we feel there's other circumstances in this case that distinguish what we have here. This is not a case where you have extrinsic evidence vitiating the party's intent to waive, or where the same clause that contains the durational language specifically says, but we're not talking about altering the obligation under the contract, or where it says, what we're really concerned about here is a completely different issue, the rule that we have to spend benefit funds for the benefit of the employees. So as to the 302 argument, I think Your Honor's asked about that. It doesn't seem to be their major point. And as the Court noted in its decision here, 302 requires that in order for dues checkoff to be lawful, the employees have to have a written authorization that's revocable. I believe it's either after a year or at the expiration of the CBA's action. No, not at the expiration, after the expiration. After. But the point being Which is the statutory recognition that the dues checkoff lives beyond the termination of the contract. That the authorization lives beyond. That the authorization lives beyond and that the dues checkoff may permissibly, I mean, may permissibly live beyond. My point being that nothing in 302 undermines the waiver finding here. I think the union is importing a meaning into that that Congress didn't intend. As we explain in a brief, Congress didn't intend 302 to alter the usual criteria for violations or waiver. That's the only thing I wanted to point, is to make sure the union's not reading something new into Section 302 that is not there. That's my only point. And I should point out that the union makes another argument that what the board's doing here is dishonoring voluntary unionism. The parties are free to bargain to different language. Now, the union may disagree with the results that this language constitutes waiver, but if all the board did was determine that this particular agreement was one where the union, the employee's voluntarily chosen representative, agreed to waive a particular right, and all the board did was honor that agreement, I'm just pointing out that doesn't dishonor voluntary unionism. And that waiver is based on a freedom to bargain principle, as the Supreme Court noted. The union can bargain to different results in different cases. Thank you, counsel. Thank you, Your Honor. I believe Mr. Anderson has a little bit of rebuttal time remaining. The concessions that the board counsel make are decisive. He says that the rule still exists, the Hacienda I rule still exists, that it was not overruled in this remand decision, and that once the board reverses the waiver theory, the court reverses the waiver theory, that the board will be free to dismiss on Hacienda I rule grounds yet again. This administrative law question comes down to the meaning of the court's mandate. In 2002, this court exercised its jurisdiction to grant review of the rule that the board set forth. That jurisdiction does not evaporate just because the board now wants to get away from the court's inquiry. The board is free not to answer the court's question, but when it does, it cannot complain when the court proceeds to rule on the union's objection to that rule in light of the board's nonresponse. And the only jurisdictional question the court needs to decide is that it has the power now to reach the union's argument that Hacienda I is irrational and contrary to the act. Well, what you want us to do is to take their decision to not apply the rule as if it were a concession, that there is no rationale for the rule. And that strikes me as usurping the function of the agency. Well, no. The agency had its chance. I mean, at oral argument, when the court asks an advocate a question, the advocate is not well advised to say, I don't want to answer that, Your Honor, but I've got another argument. Why isn't this like sending back a summary judgment where we say, you know, the summary judgment was not proper on issue A, and the case comes back, and then a party says, well, but I can also get summary judgment on issue B, and they brief that, and then the court decides on issue B. Why isn't that sort of a normal thing that can happen if it's done properly? Right. Well, in administrative law, before Allentown Mac, there was a fundamentalist that is always entitled to an endless series of remands, no matter how wrong it is in each particular instance. But after Allentown Mac, the court has much greater power to say, we want to know what the agency's rule is, and the agency is not entitled to tell us that it has a rule that's confined to this particular case. You can judge the rationality of the board's policy by looking at what it said it was doing seven years ago. And the fact that it doesn't want to defend that policy on this remand doesn't remove the court's jurisdiction to reach the union's argument. Otherwise, I'm going to be back here in 2013 to make the argument yet again. We will welcome you whenever you get here. I know. I know. I hope that we're all still practicing at that point. I hope we're all still on earth. Yeah. Anyway, quickly on the waiver argument. Judge Paez, I can't speak for the board, but I can say that the one board case that is a case where the contractual language explicitly said, and after contract expiration, no further obligation unless it's renewed in a subsequent CBA, and all of the succeeding cases, including Honeywell, specifically distinguished Cawthorn on that basis. And I would just leave the Court to those cases. Thank you. Thank you, counsel. The case just argued is submitted, and I want to express appreciation for very helpful arguments on the part of both counsel. And we will stand adjourned.
judges: Canby, Graber, Paez